UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Duracell U.S. Operations, Inc., | : No.: 1:25-cv-05020-JPC |
| | : |
| Plaintiff, | : |
| | : **ORAL ARGUMENT REQUESTED** |
| v. | : |
| | : |
| Energizer Brands, LLC, | : |
| | : |
| Defendant. | : |
| | : |

**DURACELL'S MEMORANDUM OF LAW
<u>IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION</u>**

<u>**TABLE OF CONTENTS**</u>

**Page**

I.     INTRODUCTION ......................................................................................... 1

II.    STATEMENT OF FACTS ............................................................................ 2

    A.    Energizer and Duracell Compete in the Sale of Household Batteries ................... 2

    B.    Energizer Launches Blatantly False Advertising in an Effort to Unfairly Compete with Duracell, Its Primary Competitor ....................................................... 3

    C.    Energizer's Claims Are False ............................................................... 12

        1.    Testing of Energizer MAX AA Batteries Reveals the Energizer MAX Claims Are False ................................................................... 12

        2.    Energizer MAX Batteries "Powered by Enhanced Energy" Are Largely Unavailable to Consumers—And to Duracell for Testing ......... 14

    D.    The Energizer MAX False Advertising Will Cause Irreparable Harm to Duracell ........................................................................................... 15

III.   LEGAL STANDARD ................................................................................ 17

IV.   ARGUMENT ............................................................................................. 17

    A.    Duracell Will Prevail on Its False Advertising Claims ........................................ 17

        1.    The 10% Claim and Beats Duracell Claims Are False ............................. 18

            a.    Energizer's False Statements Are Literally False or False by Necessary Implication ................................................. 19

            b.    Energizer's Tiny, Illegible Disclaimer Does Not Cure the Falsity of the Energizer False Statements ..................................... 20

        2.    Energizer's False Statements Are Material Because They Misrepresent an Inherent Quality or Characteristic of Energizer MAX Batteries ..................................................................... 21

    B.    Duracell Will Suffer Irreparable Harm if Energizer's False Advertising Campaign Is Not Enjoined ................................................................... 22

    C.    The Equitable Factors Favor Duracell ................................................... 25

V.    CONCLUSION ........................................................................................ 26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Apotex Inc. v. Acorda Therapeutics, Inc.*,
   823 F.3d 51 (2d Cir. 2016)........................................................................22

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
   784 F.3d 887 (2d Cir. 2015)......................................................................17

*Chobani, LLC v. Dannon Co.*,
   157 F. Supp. 3d 190,204 (N.D.N.Y. 2016)..........................................23, 25

*CJ Products LLC v. Snuggly Plushez LLC*,
   809 F. Supp. 2d 127 (E.D.N.Y. 2011) ............................................24, 25, 26

*Coca-Cola Co. v. Tropicana Prods., Inc.*,
   690 F.2d 312 (2d Cir. 1982)...............................................................18, 23

*Delgado v. Ocwen Loan Servicing, LLC*,
   No. 13-CV-4427 (NGG) (RML), 2014 U.S. Dist. LEXIS 135758 (E.D.N.Y.
   Sep. 23, 2014) ...................................................................................20

*Euro-Pro Operating LLC v. Euroflex Ams.*,
   No. 08CV6231 (HB), 2008 U.S. Dist. LEXIS 99725 (S.D.N.Y. Dec. 8, 2008).....................20

*General Mills, Inc. v. Chobani, LLC*,
   158 F. Supp. 3d 106 (N.D.N.Y. 2016)......................................................23

*Guru Teg Holding, Inc. v. Maharaja Farmers Market, Inc.*,
   581 F. Supp. 3d 460 (E.D. N.Y. 2021) .....................................................23

*Johnson & Johnson Vision Care, Inc. v. Ciba Vision Corp.*,
   348 F. Supp. 2d 165 (S.D.N.Y. 2004).......................................................18

*JR Tobacco of Am., Inc. v. Davidoff of Geneva (CT)*,
   957 F. Supp. 426 (S.D.N.Y. 1997)...........................................................20

*McNeil-PPC Inc. v. Pfizer Inc.*,
   351 F. Supp. 2d 226 (S.D.N.Y. 2005).......................................................22

*McNeilab, Inc. v. Am. Home Prods. Corp.*,
   848 F.2d 34 (2d Cir. 1988).....................................................................24

*Merck Eprova AG v. BrookStone Pharms., LLC*,
   920 F. Supp. 2d 404 (S.D.N.Y. 2013).......................................................18

*North Am. Olive Oil Ass'n v. Kangadis Food Inc.*,
   962 F. Supp. 2d 514,518 (S .D.N.Y. 2013)....................................................................24, 26

*Nw. Nat'l Ins. Co. of Milwaukee, Wisc. v. Alberts*,
   937 F.2d 77 (2d Cir. 1991)...............................................................................................25

*Reckitt Benckiser Inc. v. Motomco Ltd.*,
   760 F. Supp. 2d 446 (S.D.N.Y. 2011).................................................................23, 25, 26

*S.C. Johnson & Son, Inc. v. Clorox Co.*,
   241 F.3d 232 (2d Cir. 2001).....................................................................................18, 19, 22

*SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck
   Consumer Pharms. Co.*,
   906 F. Supp. 178 (S.D.N.Y. 1995).....................................................................................20

*Tiffany (NJ) Inc. v. eBay, Inc.*,
   600 F.3d 93 (2d Cir. 2010)...............................................................................................18

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
   497 F.3d 144 (2d Cir. 2007)...................................................................................18, 19, 22

**Statutes**

15 U.S.C. § 1116(a) ...........................................................................................................17, 23

15 U.S.C. § 1125(a) ...............................................................................................................18

**Rules**

Fed. R. Civ. P. 65 .....................................................................................................................1

Duracell U.S. Operations, Inc. ("Duracell") respectfully submits this Memorandum of Law and the Declarations of Ramon Velutini, Alfonso Arteaga, and Raymond Iveson in support of its motion against Energizer Brands, LLC ("Energizer") for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65.

## I.    <u>INTRODUCTION</u>

Duracell and Energizer have been competitors at the top of the global household battery market for over forty years.  They are head-to-head competitors and together hold a majority of the United States household battery market share.

Energizer launched a false advertising campaign that will unfairly and irreparably erode Duracell's goodwill and brand equity by deceiving consumers into believing Energizer's false and/or misleading claims comparing performance of its Energizer MAX® ("Energizer MAX") alkaline batteries to Duracell's Coppertop with Power Boost™ Ingredients ("Duracell Power Boost") alkaline batteries (the "Energizer MAX False Advertising").  The Energizer MAX False Advertising unambiguously and falsely claims that "Energizer MAX Outlasts Duracell Power Boost By 10%" and/or that "This Bunny Beats Drums. And Duracell".  As evidenced by Duracell's testing of the performance of Energizer MAX batteries and Duracell Power Boost batteries currently available on the market, these statements are not true.  The Energizer MAX False Advertising is a clear effort by Energizer to lure consumers away from purchasing Duracell's Power Boost batteries—and convince them to instead purchase Energizer MAX batteries—by misrepresenting key performance characteristics of its MAX batteries as compared to Duracell Power Boost batteries.

The Energizer MAX False Advertising violates the Lanham Act (and New York law) because, contrary to Energizer's claims, Energizer MAX batteries ***do not*** outperform or outlast all Duracell Power Boost batteries—the clear and unambiguous message conveyed by the Energizer

MAX False Advertising.

Preliminary injunctive relief is therefore warranted—and necessary. Launched just last month, the Energizer MAX False Advertising is likely to induce (and undoubtedly already has induced) unsuspecting consumers to purchase Energizer MAX batteries—and divert sales from Duracell—by falsely representing that Energizer MAX batteries are longer-lasting compared to Duracell Power Boost batteries, when they are not. Longevity is an inherently key characteristic of a battery and unquestionably is material to consumer purchasing decisions. Accordingly, Energizer's false comparative statements about the performance of Energizer MAX batteries compared to Duracell Power Boost batteries will cause Duracell to suffer severe damage to the core of its business, including the loss of potential consumers and customers, damage to its reputation, tarnishing of its brand, and erosion of consumer goodwill and reputation as a result of the Energizer MAX False Advertising.

Because Duracell is likely to succeed on the merits of its claims and will suffer irreparable harm each day Energizer engages in the Energizer MAX False Advertising, Duracell respectfully requests that this Court enter a preliminary injunction putting an immediate stop to Energizer's campaign of deception.

## II.    STATEMENT OF FACTS

### A.    Energizer and Duracell Compete in the Sale of Household Batteries

Duracell and Energizer have been head-to-head competitors at the top of the global household primary (disposable) battery market for more than forty years. Declaration of Ramon Velutini ("Velutini Decl.") ¶ 4. In July 2022, Duracell launched its Power Boost™ line of alkaline batteries, and all of its Coppertop AA and AAA batteries now include Power Boost™ ingredients. Declaration of Raymond Iveson ("Iverson Decl.") ¶ 5. Duracell markets and sells its Duracell Power Boost batteries within various retail channels in the United States, including in-store and/or

online, at Target, Safeway, Walgreens, Amazon, CVS, Walmart, Lowe's, and Dollar General, among many others.  Velutini Decl. ¶ 6.  Energizer markets and sells its Energizer MAX alkaline batteries within similar channels in the United States.  *Id*.  Duracell and Energizer are direct competitors that, together, hold a majority of the U.S. market share for household batteries.  *Id*. ¶ 4.

### B.   Energizer Launches Blatantly False Advertising in an Effort to Unfairly Compete with Duracell, Its Primary Competitor

In early June 2025, Energizer launched the Energizer MAX False Advertising that emphasizes the longevity of its Energizer MAX batteries.  Declaration of Alfonso Arteaga ("Arteaga Decl.") ¶ 7.  The Energizer MAX False Advertising includes statements that its Energizer MAX battery "Outlasts Duracell Power Boost by 10%" (the "10% Claim"), and/or that Energizer "Beats Drums. And Duracell." (the "Beats Duracell Claim") (collectively, the "Energizer False Statements").  *Id*.  In some instances, the Energizer False Statements are followed by an asterisk and a tiny disclaimer at the bottom of the Energizer MAX False Advertising that is virtually illegible (and entirely illegible, depending on the medium):  "Energizer MAX Enhanced Energy AA ANSI21 Personal Grooming vs. Power Boost AA" (the "Disclaimer").  *Id*. ¶ 8.  The Energizer MAX False Advertising also includes a small statement "Powered by Enhanced Energy™" or a reference to "Enhanced Energy™" (the "Enhanced Energy Statement").  *Id*. ¶ 9.[1] Energizer's campaign is widespread, with the Energizer MAX False Advertising appearing on YouTube, Facebook, and Instagram, as well as numerous popular television channels such as

---

[1]  As discussed below, to the extent the Energizer MAX False Advertising relates to a purported new Energizer MAX battery "Powered by Enhanced Energy", it is entirely unclear from the Energizer MAX False Advertising what "Powered by Enhanced Energy" means.  To the extent "Powered by Enhanced Energy" refers to a new and different Energizer MAX battery, it is not widely available on the market. Consequently, the Energizer MAX False Advertising is duping consumers into believing that regular, widely available Energizer MAX batteries all have some "enhanced power" that renders them better than Duracell Power Boost batteries.  But they do not.

BRAVO, ESPN, Food Network, TBS, and USA, as well as during marquee sporting events like the Stanley Cup Finals and NCAA Softball World Series. *Id*. ¶ 10. The Energizer MAX False Advertising also appears on Energizer's website. *Id*.

The Energizer False Statements presently appear in 15- and 30-second video spots (called "Last Battery Standing"), which involve the Energizer Bunny engaged in a "wild west" showdown where Energizer MAX defeats the Duracell battery. *Id.* ¶ 11. The Last Battery Standing ads prominently display the false 10% Claim.[2] *Id*. The 10% Claim is followed by an asterisk and the Disclaimer, which appears fleetingly—for about two seconds—in tiny font at the bottom of the screen (almost entirely unnoticeable and unreadable given the distracting and much more prominent aspects of the ad when the tiny Disclaimer is briefly shown, including the prominent 10% Claim displayed in large pink font with attendant "booming" voiceover stating the 10% Claim). *Id*. ¶ 12. And when viewed on a phone, the Disclaimer is entirely illegible. *Id*. The 15-second and 30-second versions of "Last Battery Standing" advertisements have also appeared on the following popular networks: BRAVO, Discovery Channel, E!, ESPN, ESPN2, Food Network, Golf Channel, ID, MLB Network, NHL, Oxygen, SyFy, TBS, and USA. *Id*. ¶ 13.

Energizer also launched a series of 11- to 13-second video ads on Facebook and Instagram that prominently feature the 10% Claim (and in some instances, Duracell's trade dress, as depicted below).[3] *Id.* ¶ 14. The tiny, barely perceptible Disclaimer appears in the ads for only a couple of

---

[2] These video advertisements are available on Energizer's YouTube channel at https://www.youtube.com/watch?v=M_o7cs8hy7Q (15-second version with over 3,500 views since June 2, 2025) and https://www.youtube.com/watch?v=Ap3z4Qi46IQ (30-second version with over 13,300 views since June 2, 2025). Arteaga Decl. ¶ 11. The ads also prominently feature Duracell's iconic trade dress as part of Energizer's misleading comparative message. *Id.*

[3] The Facebook video ads are available at https://www.facebook.com/Energizer/videos/959712779443590/ ("It's Not Rocket Science") (over 234,000 views since posted on June 2, 2025); https://www.facebook.com/Energizer/videos/733963792494623/ ("Who Outlasts This Bunny?") (over 127,000 views since June 2, 2025); https://www.facebook.com/Energizer/videos/636775526038837/ ("This Bunny Beats Drums and Duracell") (over 97,000 views since posting on June 2, 2025). Arteaga Decl. ¶ 14.

seconds—and is easy to miss given the distraction of dynamic headlines and beating drum audio; it is even less perceptible when the Instagram and Facebook posts are viewed on a phone (where consumers are most likely to see them)—there, the Disclaimer is entirely obstructed by the tag lines that appear at the bottom of the videos:[4]




(Instagram)                                    (Facebook)

*Id.* ¶ 15.

Each video is accompanied by a caption that states the product advertised is Energizer MAX® Enhanced Energy™, and includes the unambiguous and false statement that "Energizer

---

[4]   These advertisements are available at https://www.instagram.com/reel/DKcaTqIxMXs/ and https://www.facebook.com/Energizer/videos/959712779443590/.  Arteaga Decl. ¶ 15.

MAX® AA outlasts Duracell Power Boost by 10%*'', with no disclaimer that follows the 10% Claim:[5]



*Id.* ¶ 16.

These videos with the Energizer False Statements are presently available online and accessible by the general public, as evidenced by their collective hundreds of thousands of views. *Id.* ¶ 17.

The 10% Claim is also presently and prominently featured on Energizer's website, with a

---

[5] The captions shown here correspond with the links in footnote 3 when viewed on a desktop computer.

barely perceptible asterisk that is confusingly commingled with a ™ notice, and an illegible Disclaimer:[6]



*Id.* ¶ 18.  When viewing the website on a phone, the Disclaimer is entirely unnoticeable and similarly impossible to read:

---

[6] Available at https://energizer.com/batteries/energizer-max-alkaline-batteries/.



*Id.* ¶ 19.

Moreover, on or about June 2, 2025, Energizer began serving multiple static advertisements to consumers via Facebook and Instagram that include the Energizer False Statements and also contain the unambiguously false statement that "Energizer MAX AA outlasts Duracell Power Boost by 10%*." *Id.* ¶ 20. Though the asterisk suggests a disclaimer or source for this statement, there is no disclaimer following this statement on each of these advertisements—only a small statement at the bottom of the ad that says "Energizer Enhanced Energy™", which is followed by an even tinier statement that says: "Proven to last longer.*" *Id.* There is—and was—no support for the 10% Claim or the "Proven to Last Longer" statement whatsoever:





*Id.*

The above advertisements began running on Instagram and Facebook on or about June 2, 2025, and as of the date of this filing, are identified as "active" advertisements on the Meta platform (including Facebook and Instagram). *Id.* ¶ 21.[7] Notably, when consumers click on these

---

[7] Sometime after Duracell filed its Complaint, which specifically identified these static advertisements (Dkt. No. 1 at 9-12), it appears they were briefly removed from Meta's Ad Library, and then re-posted with a "started running" date of July 1, 2025. Arteaga Decl. ¶ 21. Meta's Ad Library is a tool provided by Meta

advertisements, they are directed to a Click2Cart landing page that contains the same false 10%

Claim and illegible Disclaimer; on this page, the consumer is presented with a choice of shopping

for the Energizer MAX batteries with Enhanced Energy at Walmart or Amazon:



*Id.* ¶ 22.

After choosing either Walmart or Amazon, the consumer is then led to a page offering the

widely available (*i.e.*, not Enhanced Energy) Energizer MAX batteries:

---

that provides users with information about active and inactive advertisements across all Meta platforms. For example, Meta's Ad Library provides information on when various advertisements began running, the platforms that the advertisements appear on (*e.g.*, Facebook and Instagram), and whether different versions of the advertisement exist. *Id.* ¶ 21. *See also* https://www.facebook.com/ads/library/?active_status=active&ad_type=all&country=US&is_targeted_country=false&media_type=all&search_type=page&view_all_page_id=64260663696.



*Id.* ¶ 23.

To the extent there is a purported **different** Energizer MAX battery "Powered By Enhanced Energy" that allegedly performs 10% better than all Duracell Power Boost batteries, consumers are **not** directed to such batteries, but instead to regular Energizer MAX batteries (*id.* ¶ 24), which do not, contrary to the plain message of the Energizer False Statements, perform better than all Duracell batteries.   Iveson Decl. ¶¶ 16-18, 25, 27.   In fact, while the Energizer MAX False

Advertising campaign is widespread, six weeks after the launch of the campaign, the product that is purported to be "Powered by Enhanced Energy" (whatever that means) is not widely available (*id.* ¶ 20), thus duping consumers into thinking they are purchasing an Energizer MAX battery from Walmart or Amazon that performs better than Duracell Power Boost batteries.

### C. Energizer's Claims Are False

#### 1. Testing of Energizer MAX AA Batteries Reveals the Energizer MAX Claims Are False

The statement in the Energizer MAX False Advertising that "Energizer Max Outlasts Power Boost By 10%" conveys the unambiguous and unqualified message that all Energizer MAX batteries (or, depending on the advertising medium, all Energizer MAX AA batteries),[8] outlast all Duracell Power Boost batteries by 10%, for any and all uses, under all standards or any reasonable basis. Similarly, the statement that "This Bunny Beats Drums. And Duracell." conveys the unambiguous and unqualified message that Energizer MAX batteries outlast all Duracell batteries for any and all uses, under all standards or any reasonable basis.

Both these claims are false. Testing shows that Energizer MAX batteries widely available on the market, including Energizer MAX AA batteries, do not outlast all Duracell Power Boost batteries by 10% (or otherwise) for all uses, under all standards or any reasonable basis. Iveson Decl. ¶¶ 16-18, 25, 27. In order to test the Energizer False Statements, Duracell purchased various packs of Energizer MAX AA and Duracell Power Boost AA batteries from various retailers in the market between June 3, 2025 and June 11, 2025. *Id.* ¶¶ 14, 21-22. Indonesia and China were the manufacturing sources of these batteries per the marking on the products.[9]  *Id.* ¶ 15.

---

[8]  As discussed above, certain of the static Facebook ads state "Energizer MAX® AA Outlasts Duracell Power Boost By 10%".

[9]  None of the Energizer MAX Indonesia and Energizer MAX China AA batteries purchased contained the "Powered by Enhanced Energy" statement on the packaging, and no Energizer MAX AA batteries containing the "Powered by Enhanced Energy" statement were available at the purchase locations as of the purchase dates. Iveson Decl. ¶ 15.

U.S. battery manufacturers, including Duracell and Energizer, have traditionally used the American National Standard Institute ("ANSI") Standard, among others (*e.g.*, based on actual devices or based on in-device testing), to generally assess battery performance for the U.S. (and Canadian) market. *Id.* ¶¶ 6-12. For AA batteries, the current ANSI Standard sets out seven application tests relevant to AA batteries—ANSI Personal Grooming, ANSI Radio/Remote, ANSI Non-motorized Toy/CD, ANSI Flashlight, ANSI Wireless Game Remote, ANSI Motorized Toy, and ANSI Digital Camera. *Id.* ¶ 10.

Duracell's testing shows that the Energizer MAX batteries on the market at the time Energizer launched the Energizer False Advertising do not outperform Duracell Power Boost batteries on the market by 10% (*i.e.*, the 10% Claim) under all tests, including the ANSI Personal Grooming application test—the sole basis for the Energizer False Statements, per the tiny Disclaimer. *Id.* ¶¶ 16-18. As indicated in the chart below, in order to outperform Duracell by 10% under the ANSI Personal Grooming application test, the Energizer MAX batteries would need to produce 1.42 SH[10] (1.29 SH x 1.1) or more; but the Energizer MAX Indonesia batteries produced only 1.41 SH and the Energizer MAX China batteries produced only 1.34 SH. *Id.* ¶¶ 16-17.

In addition to the ANSI Personal Grooming application test, Duracell tested the batteries under the ANSI Digital Camera application test (a high-rate application test, similar in electric current demand to the Personal Grooming application test). To outperform Duracell by 10%, the Energizer MAX batteries would need to produce 162.8 PC[11] (148 PC x 1.1) or more; but the Energizer MAX Indonesia batteries produced only 145 PC and the Energizer MAX China batteries produced only 149 PC. *Id.* ¶¶ 16-17. These results are summarized in the chart below.

---

[10] "SH" or "service hour" is a unit of measurement to measure battery longevity. Iveson Decl. ¶¶ 6, 9.
[11] "PC" or "pulse count" is another unit of measurement to measure battery longevity. Iveson Decl. ¶ 9.

| ANSI Test Name | Duracell Power Boost (purchased 6/6/2025-6/11/2025) | *Duracell Power Boost +10%* | Energizer Max Indonesia (purchased 6/3/2025-6/11/2025) | Energizer Max China (purchased 6/6/2025-6/10/2025) |
|---|---|---|---|---|
| ANSI Personal Grooming (SH) | 1.29 | *1.42* | 1.41 | 1.34 |
| ANSI Digital Camera (PC) | 148 | *162.8* | 145 | 149 |

Thus, ANSI high-rate application testing shows that no single source or any combination of sources of Energizer MAX AA batteries widely available on the market at the time Energizer launched the Energizer MAX False Advertising outlast Duracell Power Boost AA batteries by 10% (or otherwise) for **at least** the ANSI Personal Grooming or ANSI Digital Camera high-rate application tests.[12]  *Id*. ¶ 18.  Accordingly, the 10% Claim and the Beats Duracell Claim are false.

### 2. Energizer MAX Batteries "Powered by Enhanced Energy" Are Largely Unavailable to Consumers—And to Duracell for Testing

While the clear and unambiguous statements in the Energizer MAX False Advertising are demonstrably false, to the extent the Energizer MAX False Advertising suggests the existence of a new and different battery that is "Powered by Enhanced Energy", it is unclear what that product is, as the Energizer MAX packaging widely available on the market does not indicate that the batteries therein are "Powered by Enhanced Energy".  *Id*. ¶ 20.

The lack of batteries available on the market that purportedly are "Powered by Enhanced Energy" has impacted Duracell's ability to promptly test the veracity of the Energizer False Statements, to the extent they are based on a comparison of "Powered By Enhanced Energy" Energizer MAX batteries and Duracell Power Boost batteries.  *Id*.  Through much effort, Duracell was able to locate and purchase a small number of Energizer MAX AA batteries that contained the "Powered by Enhanced Energy" language on the packaging and promptly began testing them.

---

[12] Indeed, the Energizer MAX batteries actually perform **worse** than Duracell Power Boost under certain standards (*e.g.*, ANSI Digital Camera).  Iveson Decl. ¶¶ 16-17.

*Id.* ¶ 21.  However, such testing takes time—whether based on third-party standards (*e.g.*, ANSI,

based on actual devices, or based on in-device testing itself.  *Id.* ¶ 16.  Nonetheless, based on the

location of the manufacturing of these batteries (Indonesia and China), and the comparable date

codes to the Energizer MAX Enhanced Energy batteries tested and discussed above, the Energizer

MAX AA batteries "Powered by Enhanced Energy" are expected to perform substantially similar

as those Energizer MAX AA batteries.  *Id.* ¶¶ 22-24.[13]  In other words, they are expected to ***not***

outperform  Duracell  Power  Boost  batteries  for  any  and  all  uses,  under  all  standards  or  any

reasonable basis.

　　Yet in the meantime, Energizer is touting blatantly false claims that its Energizer MAX

batteries ***in general*** outperform Duracell Power Boost batteries.  As discussed *infra*, these false,

unsupported claims are deceiving consumers and will cause irreparable harm to Duracell.  While

Duracell has diligently sought to obtain and test the elusive Energizer MAX batteries purportedly

"Powered By Enhanced Energy", it in any event is of no moment for purposes of this Motion.  As

discussed below, the Disclaimer, which references the purported "Powered By Enhanced Energy"

Energizer MAX batteries, is insufficient as a matter of law to cure the clear and unambiguously

false message that Energizer MAX batteries outperform Duracell Power Boost batteries.

　　**D.**　　**The  Energizer  MAX  False  Advertising  Will  Cause  Irreparable  Harm  to
　　　　　　Duracell**

　　Energizer launched the Energizer MAX False Advertising in a media blitz throughout the

United States in a multitude of channels, including social media, YouTube, television (including

---

[13] The Energizer MAX AA batteries "Powered by Enhanced Energy" that Duracell located and purchased
share the same manufacturing locations (Indonesia and China) and similar manufacturing dates as the other
(non-"Enhanced Energy") Energizer MAX batteries Duracell previously purchased between June 3, 2025
and June 11, 2025.  Iveson Decl. ¶¶ 22-23.  In addition, Duracell's physical analyses suggest Energizer
MAX's "Enhanced Energy" designs are similar to Indonesia-made batteries without the "Enhanced
Energy" claim.  *Id.* ¶ 24.  The overlapping and proximate manufacturing dates and locations among the
"Enhanced Energy" packs and non-"Enhanced Energy" packs suggests an overlap of similar designs, not a
distinctive design changeover, and thus comparable performance.  *Id.*

during key sporting events), and e-commerce, in an effort to maximize the reach of the Energizer MAX False Advertising.  Arteaga Decl. ¶¶ 10, 14-23.  This has led to hundreds of thousands social media views in the weeks that the campaign has run, not to mention the reach that Energizer achieved through its advertisements outside of social media.  *Id*. ¶¶ 11, 14, 26.  Online comments in response to Energizer's videos touting the false 10% Claim include the following statements from viewers: "Energizer > Duracell" and "Energizer is just simply the best!!"  *Id*. ¶ 27.

Additionally, Duracell has recently learned that Energizer is mocking up replacements for its current in-store displays, in at least Dollar General stores, that include the false 10% Claim with no legible disclaimer.  *Id.* ¶ 28.  The new mock-ups appeared in Dollar General's "merchandise activity center"—a pseudo-store in Goodlettsville, Tennessee, where new ideas and mock-ups are shown to leadership for feedback and approval:



*Id*. If approved by Dollar General's leadership, Dollar General stores (potentially nationwide) would begin using these in-store displays boldly bearing the false 10% Claim and illegible Disclaimer for sales of the corresponding product.  *Id*.  By widely advertising the Energizer False

Statements, the harm that Energizer will cause is irreparable to Duracell's brand in the public's mind.  Velutini Decl. ¶¶ 9, 10-11.[14]

### III.    LEGAL STANDARD

An injunction to stop Energizer's false and misleading advertising campaign is warranted because Duracell can establish (1) a likelihood of success on the merits or sufficiently serious questions as to the merits; (2) a likelihood of irreparable harm; (3) that the balance of hardships tips in Duracell's favor; and (4) that an injunction would not disserve the public interest.  *See Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015).  As discussed below, Duracell easily can meet its burden for each prong.

Furthermore, under the Trademark Modernization Act, once Duracell establishes a likelihood of success on its Lanham Act claim, irreparable harm is presumed (15 U.S.C. § 1116(a))—though Duracell nonetheless makes a sufficient showing herein.

### IV.    ARGUMENT

#### A.  Duracell Will Prevail on Its False Advertising Claims

Duracell will prevail on its false advertising claims because the Energizer False Statements falsely and unambiguously convey that Energizer MAX batteries outperform all Duracell Power Boost batteries, for all uses, under all standards or any reasonable basis.

"To establish a false advertising claim under Section 43(a) of the Lanham Act, a plaintiff must prove the following elements: (1) the defendant has made a false or misleading statement; (2) the false or misleading statement has actually deceived or has the capacity to deceive a substantial portion of the intended audience; (3) the deception is material in that it is likely to

---

[14]   In addition, one of Duracell's large retail customers recently asked **Duracell** if Duracell knows what Energizer Max "Enhanced Energy" is (Arteaga Decl. ¶ 25), thus suggesting the Energizer Max False Advertising is already causing confusion in the marketplace.

influence purchasing decisions; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products."[15] *Merck Eprova AG v. BrookStone Pharms., LLC*, 920 F. Supp. 2d 404, 416 (S.D.N.Y. 2013) (citations omitted); *see also* 15 U.S.C. § 1125(a); *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001). "When an advertisement is shown to be literally or facially false," as the Energizer False Statements are here, the second element of "consumer deception is presumed and 'the court may grant relief without reference to the advertisement's [actual] impact on the buying public.'" *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007) (quoting *Coca-Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 317 (2d Cir. 1982)) (alteration in original). The elements of Duracell's claims for deceptive trade practices and false advertising under New York General Business Law and for unfair competition under New York common law mirror the Lanham Act elements in all relevant respects, and therefore, Duracell is likely to succeed on the merits of these claims as well. *Johnson & Johnson Vision Care, Inc. v. Ciba Vision Corp.*, 348 F. Supp. 2d 165, 177 n.6 (S.D.N.Y. 2004).

### 1.     The 10% Claim and Beats Duracell Claims Are False

An advertisement can be either (1) "literally false, *i.e.*, false on its face," or (2) "while not literally false, . . . nevertheless likely to mislead or confuse consumers." *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 112 (2d Cir. 2010) (quoting *Time Warner*, 497 F.3d at 153). Here, Energizer's False Statements are false on their face.[16]

---

[15] There can be no dispute that the Energizer False Statements appear in connection with goods sold in interstate commerce, as required to state a claim under the Lanham Act. The Energizer False Statements have appeared in online and television advertisements offering Energizer MAX batteries, which are sold in interstate commerce. Arteaga Decl. ¶¶ 10-23.

[16] Although the Energizer False Statements, along with the other false and misleading claims identified in Duracell's Complaint, may also impliedly convey a misleading message, Duracell is moving for a

### a.      *Energizer's False Statements Are Literally False or False by Necessary Implication*

In assessing literal falsity, "a district court must examine not only the words, but also the visual images . . . to assess whether [the advertisement] is literally false." *Time Warner*, 497 F.3d at 159 (quoting *S.C. Johnson & Sons, Inc.*, 241 F.3d at 238) (alteration original). Additionally, under Second Circuit law, an advertisement is literally false by "necessary implication" when, considered in its entirety and full context, it necessarily implies a false message. *Id.* at 158. Even where "no combination of words" on the page is untrue, a message can be "literally false" under this doctrine if the clear meaning of the statement, considered in context, is false. *Id.* at 154-55, 158. Here, each of the Energizer False Statements is literally false.

The 10% Claim. The clear and unambiguous message of the Energizer MAX False Advertising featuring the 10% Claim is that all Energizer MAX batteries—or, depending on the advertising medium, all Energizer MAX AA batteries—outlast all Duracell Power Boost batteries by 10% for all uses, under all standards or any reasonable basis (or, at minimum, necessarily implies it). Duracell's testing demonstrates that Energizer MAX AA batteries widely available on the market do not outlast all Duracell Power Boost batteries by 10%. *See supra* Section II.C.1. Indeed, not only do the Energizer MAX batteries fail to beat Duracell Power Boost by 10%, as shown above, the Energizer MAX batteries actually perform ***worse*** than Duracell Power Boost under certain standards (*e.g.*, ANSI Digital Camera). Iveson Decl. ¶¶ 16-17. Thus, the Energizer MAX False Advertising featuring the 10% Claim is false because Energizer MAX batteries widely available on the market do not "outlast" Duracell Power Boost batteries by 10% for all uses, under all standards, or any reasonable basis. *Id.*

---

preliminary injunction on a literal falsity theory for the unambiguously false 10% Claim and Beats Duracell Claim.

The Beats Duracell Claim. The clear and unambiguous message of the Energizer MAX False Advertising featuring the Beats Duracell Claim is that Energizer MAX batteries outlast all Duracell batteries for all uses, under all standards, or any reasonable basis (at minimum, necessarily implies it). Duracell's testing, however, demonstrates that Energizer MAX batteries widely available on the market do not outlast all Duracell Power Boost batteries for all uses, under all standards, or any reasonable basis. *See supra* Section II.C.1.

These claims are therefore literally false.

### b.    *Energizer's Tiny, Illegible Disclaimer Does Not Cure the Falsity of the Energizer False Statements*

"[G]enerally, a disclaimer is ineffective to cure a literally false statement." *JR Tobacco of Am., Inc. v. Davidoff of Geneva (CT)*, 957 F. Supp. 426, 437 (S.D.N.Y. 1997). In assessing whether a disclaimer is sufficient to cure a false statement, "factors such as font size, placement, or emphasis of a disclaimer can be relevant to whether the terms and conditions [of a disclaimer] were in fact fully disclosed." *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427 (NGG) (RML), 2014 U.S. Dist. LEXIS 135758, at *24-25 (E.D.N.Y. Sep. 23, 2014) (internal quotation marks and citation omitted); *see also JR Tobacco*, 957 F. Supp. at 437-38 (finding that disclaimer "printed in small type beneath the large boldface display of the Davidoff trademark," which disclaimed "corporate affiliation," did "not effectively cure the literal falsehoods communicated by the text of the brochure"); *SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 906 F. Supp. 178, 186 (S.D.N.Y. 1995) (holding that "a footnote or disclaimer which is so inconspicuously located or in such fine print that readers tend to overlook it, will not remedy the misleading nature of a claim") (internal quotation marks and citation omitted); *Euro-Pro Operating LLC v. Euroflex Ams.*, No. 08CV6231 (HB), 2008 U.S. Dist. LEXIS 99725, at *17 (S.D.N.Y. Dec. 8, 2008) (finding claims were "literally false,

notwithstanding the onscreen text" disclaimer because "a disclaimer or contradictory claim placed in an advertisement will not necessarily remedy an advertisement that is misleading per se where the disclaimer is in small text or difficult to read").

That is precisely the case here. The sole basis for the Energizer False Statements, according to the illegible Disclaimer, is a comparison of the performance of Energizer MAX AA batteries that purport to be "Powered By Enhanced Energy" with Duracell Power Boost AA batteries under a single ANSI standard. Arteaga Decl. ¶¶ 8, 12, 15, 18. The Disclaimer states "Energizer MAX Enhanced Energy AA ANSI21 Personal Grooming vs. Power Boost AA" or "AA only ANSI21 Personal Grooming vs. DUR Power Boost™" (on energizer.com). *Id*. ¶¶ 8, 18.

In every iteration of the advertisements containing the Energizer False Statements, the Disclaimer is *significantly* smaller than the Energizer False Statements. *Id.* ¶¶ 8, 12, 15, 18-20, 22; *see supra* Section II.B. And in some advertisements and media, the Disclaimer is entirely illegible. *Id.* ¶¶ 12, 15, 18-20, 22; *see supra* Section II.B. Also, in some advertisements, the Disclaimer includes trademark notices that further complicate legibility and comprehensibility (assuming that consumers actually pause a video to read the Disclaimer, if they can at all). *Id.* ¶ 18. Thus, consumers are not likely to notice, let alone read, the Disclaimer. Accordingly, the Disclaimer does not "cure" the literal falsity of the Energizer False Statements.

Moreover, not only is the Disclaimer illegible, it is also *false* if the Enhanced Energy batteries perform, as expected, similarly to the non-"Enhanced Energy" Energizer MAX AA batteries currently widely available on the market. *See supra* Section II.C.2.

### 2. Energizer's False Statements Are Material Because They Misrepresent an Inherent Quality or Characteristic of Energizer MAX Batteries

Duracell unquestionably will succeed in showing that the Energizer False Statements are material. A false statement is material when it would tend to affect a consumer's purchasing

decision because the statement concerns an inherent quality or characteristic of the product at issue. *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 63 (2d Cir. 2016); *McNeil-PPC Inc. v. Pfizer Inc.*, 351 F. Supp. 2d 226, 248 (S.D.N.Y. 2005). The Energizer False Statements plainly meet this standard. As Energizer must concede, longevity is one of the core product features motivating consumers' battery purchasing decisions. Velutini Decl. ¶ 8. Where, as here, such a core product feature is the subject of a false claim, courts routinely conclude that such claims are material. *See, e.g.*, *S. C. Johnson & Son*, 241 F.3d at 239-40 (affirming injunction on false statements regarding effectiveness of seal of resealable storage bags).

### B.    Duracell Will Suffer Irreparable Harm if Energizer's False Advertising Campaign Is Not Enjoined

The Energizer MAX False Advertising undoubtedly will (and likely already has) (1) mislead or confuse consumers regarding the availability of an Energizer MAX battery that performs better than Duracell Power Boost batteries (whether "Powered By Enhanced Energy" or otherwise), (2) divert consumers under false pretenses to websites where there is, or was, no such product available, and (3) mislead or confuse consumers into purchasing Energizer MAX batteries that do ***not*** outperform Duracell Power Boost batteries.

In false advertising cases, a plaintiff "need not point to an actual loss or diversion of sales" to establish irreparable harm at the preliminary injunction stage. *Time Warner*, 497 F.3d at 161 (internal quotation marks and alterations omitted). The Second Circuit requires only "proof which provides a reasonable basis for believing that the false advertising will likely cause it injury." *Id.* (internal quotation marks and citation omitted). Duracell can make this showing in at least two ways.

*First*, the Lanham Act expressly includes a presumption of irreparable injury that is triggered by a finding of a violation of the Lanham Act. 15 U.S.C. § 1116(a) ("A plaintiff seeking

any such injunction shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction . . . .").  Duracell's likelihood of success on its claims, coupled with its diligence in timely bringing this action and motion for preliminary injunction, is sufficient to establish a presumption of irreparable harm.  *Id.*; *see also Guru Teg Holding, Inc. v. Maharaja Farmers Market, Inc.*, 581 F. Supp. 3d 460, 469 (E.D. N.Y. 2021) (granting preliminary injunction because plaintiff diligently and swiftly sought to defend its legal rights from the time of the opening of defendant's store).

*Second*, even absent a presumption, a party may make an independent showing of irreparable harm in a Lanham Act case by showing "(i) that the parties are competitors in the relevant market, and (ii) that there is a logical causal connection between the alleged false advertising and its own sales position."  *Reckitt Benckiser Inc. v. Motomco Ltd.*, 760 F. Supp. 2d 446, 454 (S.D.N.Y. 2011) (internal quotation marks and citation omitted); *see also General Mills, Inc. v. Chobani, LLC*, 158 F. Supp. 3d 106, 120 (N.D.N.Y. 2016); *Chobani, LLC v. Dannon Co.*, 157 F. Supp. 3d 190,204 (N.D.N.Y. 2016) (applying test to find plaintiff suffered irreparable harm and observing that "[i]t is virtually impossible to prove that so much of one's sales will be lost or that one's goodwill will be damaged as a direct result of a competitor's advertisement.") (quoting *Coca-Cola*, 690 F.2d at 315).

There is no doubt that Duracell and Energizer are head-to-head competitors in the market for household alkaline batteries. They are by any measure the two most well-known and recognizable brands of household batteries in the United States, and together they account for the majority of the U.S. market for household batteries.  Velutini Decl. ¶ 4.  Duracell and Energizer are close competitors in terms of market share, so the sale of one party's products would likely

impact the sale of the other party's product.  *Id.*  This is particularly the case here, where the Energizer MAX False Advertising makes direct comparative claims, pitting Energizer MAX batteries against Duracell Power Boost batteries.  *McNeilab, Inc. v. Am. Home Prods. Corp.*, 848 F.2d 34, 38 (2d Cir. 1988) ("A misleading comparison to a specific competing product necessarily diminishes that product's value in the minds of the consumer.").  Because there is thus a "logical causal connection" between the Energizer MAX False Advertising and Duracell's sales position, Duracell is likely to suffer irreparable harm if the Energizer False Statements are not immediately enjoined.  *CJ Products LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 149 (E.D.N.Y. 2011); *see also North Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514,518 (S.D.N.Y. 2013) (finding logical causal connection where parties were in competition and thus, "any additional sales [defendant] enjoys will likely come at the expense of [plaintiffs]").

As discussed above, Energizer's campaign to deceive consumers through the Energizer MAX False Advertising is working, as online comments on the Energizer MAX False Advertising indicate consumers believe the Energizer False Statements.  *See supra* Section II.D.

And absent an injunction, the Energizer False Statements will only become more widespread.  Indeed, in addition to their presence on social, online and on-air media, Energizer has begun efforts to present at least the false 10% Claim through in-store displays at retail locations such as Dollar General.  *See supra* Section II.D.

The risk of irreparable harm is especially pronounced because of the timing of Energizer's False Statements.  The period from July through November, commonly referred to as "hurricane season," is a critical one for battery manufacturers, as consumers prepare for potential power outages and other emergency situations.  Velutini Decl. ¶ 10.  Energizer's misleading campaign conveniently coincides with hurricane season, given that the Energizer MAX False Advertising

campaign launched the month before hurricane season began.

Additionally, the loss of reputation and goodwill and subsequent loss of customers that Duracell will suffer are not precisely quantifiable. Therefore, remedies at law cannot adequately compensate Duracell for its injuries. *See Nw. Nat'l Ins. Co. of Milwaukee, Wisc. v. Alberts*, 937 F.2d 77, 80 (2d Cir. 1991) ("The irreparable injury requisite for [a] preliminary injunction overlaps with the absent lack of adequate remedy at law necessary to establish the equitable rights.").

In short, Duracell has built a well-earned reputation as a trusted battery brand, and that goodwill is a substantial reason why Duracell is a market leader in the sale of alkaline household batteries. *Id.* ¶ 7. If Energizer is allowed to continue to mislead consumers into believing that Energizer MAX batteries outperform all Duracell Power Boost batteries, the reputational damage—including loss of goodwill—that will result is not readily ascertainable. *Id.* ¶ 9. Indeed, prospective loss of this goodwill alone is sufficient to support a finding of irreparable harm. *Snuggly Plushez LLC*, 809 F. Supp. 2d at 149 (internal quotation marks and alterations omitted); *Dannon*, 157 F. Supp. 3d at 205 (same); *Reckitt Bensicker*, 760 F. Supp. 2d at 454 (same).

## C.    The Equitable Factors Favor Duracell

The remaining preliminary injunction factors—the balance of hardships and the public interest—weigh in Duracell's favor. The balance of hardships weighs in Duracell's favor almost by definition because Energizer cannot "assert an equitable interest in the perpetuation of an advertising campaign" against its direct competitor that is false. *See Reckitt Benckiser*, 760 F. Supp. 2d at 456-57; *see also Snuggly Plushez LLC*, 809 F. Supp. 2d at 149 ("Defendants are unable to assert an equitable interest in continuing a false advertising campaign."). In addition, as discussed above, Duracell is likely to suffer irreparable harm in the form of at least some unascertainable loss of sales and goodwill if Energizer is allowed to continue its false and misleading claims. Velutini Decl. ¶¶ 9, 10-11.

Even if Energizer could assert some protectable interest in continuing to deceive consumers about the comparative longevity of Energizer MAX batteries (which it cannot), an injunction would not impose an undue hardship on Energizer. Any conceivable hardship an injunction would impose on Energizer would be limited to the costs of removing the Energizer MAX False Advertising from its various platforms (which is easy enough to do for its social media, online and on-air marketing). That minimal hardship is significantly outweighed by the irreparable harm to Duracell that would persist in the absence of injunctive relief.

Finally, the public interest would be served, rather than disserved, by an injunction in this case. "The public has a strong interest in receiving accurate information" and "preventing customer confusion or deception." *Snuggly Plushez LLC*, 809 F. Supp. 2d at 149 (internal quotation m arks and citation omitted). As a result, courts in this Circuit routinely conclude that injunctions to stop false advertising campaigns serve the public interest. *See id.*; *see also North Am. Olive Oil Ass'n*, 962 F. Supp. 2d at 524 (noting that "public interest . . . will indeed be well served by ensuring that consumers do not purchase a product based on false advertising"); *Reckitt Benckiser*, 760 F. Supp. 2d at 457 ("[T]he public interest is served by preventing customer confusion or deception.") (internal quotation marks and citation omitted).

Enjoining the Energizer False Statements, made in connection with the Energizer MAX False Advertising campaign, will serve the public interest by preventing customers from incorrectly concluding that Energizer MAX batteries last longer than all Duracell Power Boost batteries, and inducing them to purchase Energizer MAX batteries that do not, in fact, outlast Duracell Power Boost batteries.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Duracell respectfully requests that the Court enter a preliminary injunction barring Energizer from employing the Energizer False Statements, continuing its

Energizer MAX False Advertising campaign, or otherwise marketing its Energizer MAX batteries

in a manner that falsely conveys that Energizer MAX batteries are longer-lasting than all Duracell

Power Boost batteries, for all uses, and under all standards or any reasonable basis.

Dated:  July 15, 2025                                    Respectfully submitted,


                                                        /s/ James T. Hultquist

                                                        Casey D. Laffey
                                                        REED SMITH LLP
                                                        599 Lexington Avenue
                                                        22nd Floor
                                                        New York, NY 10022
                                                        Telephone: + 1 212 521 5400
                                                        Facsimile: + 1 212 521 5450

                                                        James T. Hultquist (*pro hac vice*)
                                                        Jennifer Y. DePriest (*pro hac vice*)
                                                        REED SMITH LLP
                                                        10 South Wacker Drive
                                                        Chicago, IL  60606-7507
                                                        Telephone: +1 312 207 1000
                                                        Facsimile: +1 312 207 6400

                                                        Robert N. Phillips (*pro hac vice*)
                                                        Christopher J. Pulido (*pro hac vice*)
                                                        Reed Smith LLP
                                                        101 Second Street
                                                        Suite 1800
                                                        San Francisco, CA  94105-3659
                                                        Telephone: +1 415 543 8700
                                                        Facsimile: +1 415 391 8269

                                                        *Counsel for Duracell U.S. Operations, Inc.*

## CERTIFICATE OF COMPLIANCE WITH WORD-COUNT LIMITATIONS

This brief complies with the word-count limitations of Joint Local Rule 7.1(c) because it contains 6,644 words, including material contained in footnotes or endnotes, and excluding the parts exempted by Joint Local Rule 7.1(c).  In preparing this certificate, I have relied on the word count of the word-processing program used to prepare this brief.

/s/ James T. Hultquist
James T. Hultquist